# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

REBECA SANTIAGO,
Plaintiff,

vs.

MEYER TOOL, INC.,
Defendant.

Case No. 1:19-cv-32
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Rebeca Santiago brings this action against defendant Meyer Tool Inc., alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"), and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), as well as various state law statutes. This matter is before the Court on defendant's motion for partial judgment on the pleadings on plaintiff's Title VII gender discrimination claim (Count 1) and wrongful termination in violation of Ohio public policy claim (Count 6) (Doc. 14), plaintiff's response in opposition (Doc. 15), defendant's reply memorandum (Doc. 17), and plaintiff's sur-reply (Doc. 23).

## I. Background Facts

Plaintiff began working as a machine operator for Meyer Tool in or about 1997. (Complaint, Doc. 1 at ¶ 7). Plaintiff alleges that as a result of her gender, she was assigned less-desirable shifts and assignments than her male counterparts, worked through lunch, was blamed for other workers' errors, and received lower pay not reflective of her seniority. (*Id.* at ¶¶ 8-11). Plaintiff also alleges that her male supervisor, Edwin Finn, made her the subject of sexual jokes and made unwanted sexual advances towards her for years. (*Id.* at ¶¶ 12, 17). In 2016, plaintiff

alleges that she was denied a raise by Finn, yet other workers who completed the same or substantially similar work received a raise. (*Id.* at ¶ 13).

Plaintiff also alleges that she has HIV/AIDS. (*Id.* at ¶ 14). During her tenure with Meyer, she was approved to take intermittent disability leave under the FMLA. (*Id.* at ¶ 15). In July 2014, plaintiff's doctor completed a medical certification form documenting plaintiff's severe headaches/migraines. (*Id.* at ¶ 16). On July 20, 2017, Finn informed plaintiff that she was fired for producing non-conforming parts. (*Id.* at ¶ 19). Plaintiff alleges that other employees who produced non-conforming parts were not terminated and that the majority of machine operators at Meyer are white males. (*Id.* at ¶¶ 20-21).

Plaintiff subsequently filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On October 31, 2017, plaintiff filed a charge alleging discrimination based on disability. (*Id.* at ¶ 22, Doc. 13-2[1]). On July 13, 2018, plaintiff filed a second charge alleging gender discrimination in violation of Title VII and the EPA. (*Id.* at ¶ 23, Doc. 13-3).

On October 23, 2017, one week and one day before filing the first charge, plaintiff submitted an EEOC inquiry questionnaire. (Doc. 15-1 at 1-4). On this form, in response to the question, "Why do you think you were discriminated against?," plaintiff checked the box for "Disability." (*Id.* at 2). In response to the question, "Who was treated better than you?," plaintiff wrote that "Ruth Clark and many more" were treated better than her because they

---

[1] On February 19, 2019, defendant filed exhibits A, B, C, and D that were referenced in its answer and affirmative defenses. (Doc. 13). Two of these exhibits include plaintiff's EEOC charges. (Docs. 13-1, 13-2). Defendant also includes these charges in its motion for judgment on the pleadings. (Doc. 14). In ruling on a motion for judgment on the pleadings, the Court can consider "exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant['s] motion [for judgment on the pleadings], so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See also Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). As such, the Court will consider these EEOC charges in ruling on the motion for judgment on the pleadings.

2

"deviated dozens of parts and still work there after many years." (*Id.* at 3). When asked to indicate how these people were different from her, plaintiff checked boxes for "age," "color," "disability," "national origin," "race," and "sex." (*Id.*). Plaintiff also indicated on the questionnaire that Finn was responsible for the discriminatory action. (*Id.*).

**II. Motion for Judgment on the Pleadings**

  **A. Standard**

A motion for judgment on the pleadings made pursuant to Rule 12(c) is governed by the same standards applicable to a motion to dismiss under Rule 12(b)(6). *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007) ("[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) are the same."). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*,

3

579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B. Defendant's partial motion for judgment on the pleadings should be granted**

   **a. Plaintiff's Count 1 Gender Discrimination claim under Title VII should be dismissed for failure to exhaust administrative remedies.**

Defendant argues that plaintiff failed to timely exhaust her administrative remedies on her Count 1 gender discrimination claim. (Doc. 14 at 3-5). Defendant argues that while plaintiff's first EEOC charge was filed within 300 days of her termination and is therefore timely, it fails to mention gender discrimination and fails to put the EEOC on notice that plaintiff perceived herself to be a victim of gender discrimination. (*Id.* at 4-5). Defendant asserts that plaintiff's second EEOC charge, which mentions gender discrimination, was not filed within 300 days of her termination and is therefore untimely. (Doc. 14 at 3-5).

In response, plaintiff argues that her EEOC Intake Questionnaire, filed on October 23, 2017, and her first charge of discrimination, filed on October 31, 2017, should be construed together as one timely charge of gender discrimination. (Doc. 15 at 6-7) (citing *Woods v. FacilitySource LLC*, No. 2:13-cv-621, 2015 WL 247980, at *5 (S.D. Ohio Jan. 20, 2015), *aff'd*, 640 F. App'x 478 (6th Cir. 2016); *Dimas v. Michigan Dep't of Civil Rights*, No. 4:02-cv-178, 2004 WL 1397558, at *6 (W.D. Mich. Mar. 19, 2004); *Nadel v. Time Warner Cable LLC*, No. 1:15-cv-447, 2016 WL 5478511, at *6 (S.D. Ohio Sept. 28, 2016) (Litkovitz, M.J)). Plaintiff argues that the answers contained in her EEOC questionnaire, coupled with the timely charge filed one week and one day later, are sufficient to give the EEOC notice of her gender discrimination claim. (*Id.* at 8).

In reply, defendant maintains that plaintiff's first EEOC charge and intake questionnaire, even if taken together as one filing, do not demonstrate that plaintiff exhausted her

4

administrative remedies because no "objective observer" would believe that the filing constitutes a charge of gender discrimination. (Doc. 17 at 2-3) (citing *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 237-38 (6th Cir. 2017) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508-09) (6th Cir. 2011) (in turn quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 398 (2008)). Defendant argues that plaintiff's EEOC intake questionnaire fails to make specific claims of gender discrimination in the narrative portion and plaintiff's first charge fails to mention plaintiff's gender or make a single allegation of gender discrimination. (*Id.* at 3).

In her sur-reply, plaintiff maintains that her questionnaire should be taken into consideration with her subsequently-filed EEOC charge, which together "constitute a request for the EEOC to act." (Doc. 23 at 3). Plaintiff relies heavily on the undersigned's decision in *Nadel*, 2016 WL 5478511, at *6, in support of her argument.

Exhaustion of administrative remedies is a precondition to filing a Title VII lawsuit. *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). As a general rule, a plaintiff must first file a timely charge with the EEOC before pursuing an employment discrimination action under Title VII. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). *See also Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) (to bring a Title VII action in federal court, a plaintiff must (1) timely file a charge of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's right-to-sue letter) (citing 42 U.S.C. § 2000e-5(f)(1) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)). The EEOC charge "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). The EEOC charge must be "sufficiently precise to identify the parties, and to describe generally

5

the action or practices complained of." 29 C.F.R. § 1601.12(b); *Williams*, 643 F.3d at 508.

"The general rule is that a plaintiff may file suit . . . in regard to the claims . . . within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 491 (6th Cir. 2014) (citing *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 470-71 (6th Cir. 2008) (internal quotation marks omitted)). Under this "expected scope of investigation test," it is not necessary that the EEOC actually investigate the claim later brought by the plaintiff or that the plaintiff specifically state the claim in the EEOC charge. *Id.* (citing *Scott*, 275 F. App'x at 471). The "expected scope of the investigation test" requires a plaintiff to allege "sufficient facts in his or her EEOC [charge] to put the EEOC on notice of the other claim." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)).

The regulations provide that a charge should contain, among other information, "a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). "A charge may be amended to cure technical defects or omissions . . . or to clarify and amplify allegations made therein." *Id.* § 1601.12(b). The Sixth Circuit has recently clarified that "a filing other than a charge will not be deemed a charge unless an 'objective observer' would believe that the filing taken as a whole suggests that the filer requests the agency to activate its machinery and remedial processes." *Russ*, 720 F. App'x at 237-38 (citing *Williams*, 643 F.3d at 508-09) (in turn quoting *Holowecki*, 552 U.S. at 398, 402)).

The Court concludes that plaintiff's first charge of discrimination filed on October 31, 2017, even if liberally construed and considered in conjunction with her EEOC questionnaire filed on October 23, 2017, is insufficient to exhaust her administrative remedies for her Title VII

gender discrimination claim. In plaintiff's first charge of discrimination, which was filed within 300 days of her termination, she only checked the box indicating that she was discriminated against based on her disability. (Doc. 13-2). The narrative portion of the charge mentions nothing about discrimination based on gender. (*Id.*). This charge, even considered with plaintiff's intake questionnaire, cannot reasonably be construed as a request for the EEOC to take remedial action on her gender discrimination claim. Plaintiff directs the Court's attention to several answers contained in the questionnaire, including her answer that "Ruth Clark" and many others were treated better than her and that these people were different than her based on age, color, disability, national origin, race, and *sex*. (Doc. 15 at 8) (emphasis added) (citing Exh. A, Doc. 15-1). Plaintiff also directs the Court's attention to the questionnaire answer noting that her supervisor, Mr. Finn, was responsible for the discriminatory action. She states that the EEOC was therefore on notice that any disparate treatment came from a man. (*Id.* at 9). These apparent references to sex or gender in the EEOC questionnaire are "oblique" at best and would unnecessarily require a reasonable observer to speculate that plaintiff was discriminated on the basis of her gender. *Russ*, 720 F. App'x at 237. Moreover, the Court finds it significant that plaintiff explicitly failed to check the box for "sex" on the questionnaire when answering the question "[w]hy do you think you were discriminated against?" (Doc. 15-1 at 2).

Plaintiff cites the undersigned's decision in *Nadel* and the decisions of *Woods* and *Dimas* for the proposition that "[d]ocuments such as letters and EEOC questionnaires can be considered part of an EEOC charge when the requirements for an EEOC charge provided in 29 [C.F.R] § 1601.12(a) are satisfied by these documents." (Doc. 15 at 6) (citing *Woods*, 2015 WL 247980, at *5; *Dimas*, 2004 WL 1397558, at *6; *Nadel*, 2016 WL 5478511, at *6). However, these cases are factually distinguishable and primarily address the requirement that a plaintiff must submit a

7

signed and verified questionnaire or charge to the EEOC. In *Nadel*, the undersigned held that the plaintiff failed to exhaust his administrative remedies because he failed to submit a signed or sworn declaration to the EEOC at any time during the course of the administrative proceedings. 2016 WL 5478511, at *6. The undersigned distinguished the decisions of *Woods* and *Dimas* on this basis and also recognized that the plaintiffs in those cases had submitted intake questionnaires that were accompanied by factual statements providing more details of the alleged discrimination. *Id.* at *5-6. Here, plaintiff's EEOC questionnaire, even when considered with her first charge, fails to provide sufficient factual details to prompt the EEOC to investigate a claim for gender discrimination.

Because plaintiff failed to timely submit a charge of discrimination on her Title VII claim for gender discrimination, she is precluded from pursuing her Title VII claim in this Court. Defendant's motion for judgment on the pleadings on plaintiff's Count 1 claim for gender discrimination in violation of Title VII should be granted.

### b. Plaintiff's Count 6 claim for wrongful termination in violation of Ohio public policy should be dismissed for failure to state a claim for relief.

Plaintiff's sixth cause of action alleges that her termination "on the basis of gender and/or disability violates Ohio public policy embodied in the ADA, 42 U.S.C. §§ 12112 *et seq.* and the Equal Pay Act section 29 U.S.C. § 206(d)(1) *et seq.*" (Complaint, Doc. 1 at ¶ 71). Defendant argues that Count 6 should be dismissed for failure to state a claim upon which relief may be granted. (Doc. 14 at 5-7). Defendant contends that plaintiff cannot maintain a separate state law tort claim for wrongful termination in violation of Ohio public policy based on the ADA because "the remedies found in the ADA are sufficient to protect society's interest." (*Id.* at 6) (citing *Eddy v. J&D Home Improvement, Inc.*, No. 2:17-cv-1113, 2018 WL 2287890 (S.D. Ohio May 18, 2018)). Defendant argues that similarly a claim for wrongful termination in violation of

8

Ohio public policy based on the EPA fails because the remedy provisions of the EPA "adequately protect society's interest in guaranteeing equal pay regardless of an employee's sex." (*Id.* at 7).

"The common law doctrine of employment-at-will generally governs employment relationships in Ohio." *Queen v. Park Nat'l Bank*, No. 2:09-cv-00033, 2010 WL 11639834, at *4 (S.D. Ohio Mar. 10, 2010) (citing *Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 39-40 (Ohio 2007); *Wiles v. Medina Auto Parts*, 773 N.E.2d 525, 529 (Ohio 2002)). Nevertheless, "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Id.* (quoting *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981, 986 (Ohio 1990), *overruled in part on other grounds*, *Tulloh v. Goodyear Atomic Corp.*, 584 N.E.2d 729 (1991)). *See also Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 829 (Ohio 2011) ("[I]f an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule [of employment-at-will]."). In order to maintain a common-law claim for wrongful termination in violation of Ohio public policy, a plaintiff must allege:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

9

*Leininger*, 875 N.E.2d at 39-40.

The Ohio Supreme Court has stated that the second element of a wrongful termination claim, the jeopardy element, requires a court to examine whether there are alternative means of promoting the public policy at issue:

> Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, the issue of adequacy of remedies becomes a particularly important component of the jeopardy analysis. If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Wiles*, 773 N.E.2d at 531. For this reason, this Court has held that a claim for wrongful discharge in violation of state public policy fails where a statute like the ADA provides adequate protection and remedies. *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 708 (S.D. Ohio 2014) (Dlott, S.J.) (citing cases within the Sixth Circuit holding that a state law claim for wrongful termination in violation of public policy was precluded because there are adequate remedies available under the ADA). Similarly, the Court in *Eddy*, cited by defendant, held that the plaintiff could not maintain a state law claim for wrongful termination in violation of the public policy embedded in the ADA. 2018 WL 2287890, at *4 (quoting *Leininger*, 875 N.E.2d at 42). The Court noted "the ADA already provides a statutory remedy to [p]laintiff," which was "adequate to protect society's interest in discouraging employers from engaging in discrimination. . . ." *Id.* (internal quotation marks omitted). Because plaintiff bases her wrongful termination in violation of public policy claim under the ADA, which already provides an adequate remedy to plaintiff, she may not maintain a separate cause of action under Ohio common law. *Day*, 82 F. Supp. 3d at 708.

Plaintiff cites to *Bukta v. J.C. Penney Co.*, 359 F. Supp. 2d 649 (N.D. Ohio 2004), a Northern District of Ohio case that has been overruled,[2] in support of her argument that the Ohio Supreme Court has not found ADA remedies to be broad enough to foreclose wrongful termination of public policy claims. The decision in *Bukta* is not persuasive. In *Eddy*, this Court rejected a similar argument based on the *Bukta* decision:

> The Ohio Supreme Court has made clear that "when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy." Accordingly, "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct."
>
> In accordance with this principle, courts have consistently found that "the statutory remedies that exist under the ADA . . . are adequate to protect society's interest in discouraging employers from engaging in discrimination and further provide sufficient compensation to the victims of such discrimination."

*Eddy*, 2018 WL 2287890, at *4 (quoting *Leininger*, 875 N.E.2d at 36, and citing *Dillbeck v. Huntington Nat'l Bank,* No. 2:03-cv-0689, 2005 WL 1266690, at *7 (S.D. Ohio, May 26, 2005); *Day*, 82 F. Supp. 3d at 708 ("Because the ADA provides an available remedy to Plaintiff he cannot bring the same claim under Ohio common law.")). Therefore, plaintiff cannot maintain a state law claim for wrongful termination embedded in the ADA.

Likewise, the Court concludes that plaintiff cannot maintain a common law public policy claim based on the EPA. Plaintiff has not cited, and the Court has not found, any Ohio case that recognizes a cause of action based on a violation of public policy in a context other than wrongful termination of employment. *See, e.g., Woods v. Miamisburg City Schools*, 254 F. Supp. 2d 868, 877 (S.D. Ohio 2003) ("[A]lthough Ohio recognizes claims for discharge in

---

[2] *See Shaw v. Econ. Opportunity Planning Ass'n of Greater Toledo, Inc.*, No. 3:11-cv-564, 2013 WL 633825, at *8 (N.D. Ohio Feb. 20, 2013); *Kleinmark v. CHS–Lake Erie, Inc.*, No. 3:07-cv-1512, 2008 WL 2740817, at *6 (N.D. Ohio July 10, 2008) (*Butka* has been overruled with respect to § 4112.02 public policy claims).

violation of public policy, . . . Ohio courts have repeatedly rejected attempts to expand that claim beyond the discharge of an at-will employee."); *Bools v. General Elec. Co.*, 70 F. Supp. 2d 829, 832 (S.D. Ohio 1999) ("Ohio appellate courts seem hesitant about expanding the exception [to] the doctrine of employment-at-will beyond claims of wrongful termination"). Plaintiff has not identified a clear public policy articulated in the EPA that would give rise to a common law public policy claim in this case. While plaintiff has alleged that she was paid less than her male counterparts for the same work, she has not alleged a connection between alleged pay discrimination and her termination from employment. In the absence of any legal authority recognizing a general tort for violation of public policy against discrimination in equal pay, plaintiff's complaint fails to state a claim for relief.

Even assuming, *arguendo*, the EPA was a source of such public policy, plaintiff fails to state a claim for relief in this case. The Supreme Court of Ohio has broadly recognized that when a statute provides adequate remedies to discourage wrongful conduct, it is unnecessary to recognize a common law claim premised on that underlying public policy. *Wiles*, 773 N.E.2d at 531. Such is the case with the EPA.

The EPA, a 1963 amendment to the Fair Labor Standards Act ("FLSA"), prohibits disparate wages on the basis of sex unless "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). For violations of the EPA, plaintiffs have remedies through FLSA's damages provision, which provides that "[a]ny employer who violates [Sections 206 or 207 of the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29

U.S.C. § 216(b). Like the ADA, the EPA provides a comprehensive damages scheme to remedy sex-based wage discrimination such that plaintiff cannot maintain a state law claim for wrongful termination premised on the EPA. Defendant's motion for judgment on the pleadings on plaintiff's Count 6 wrongful termination in violation of public policy claim should be granted.

Based on the foregoing, it is **RECOMMENDED** that defendant's partial motion for judgment on the pleadings (Doc. 14) be **GRANTED** in its entirety.

Date: 7/23/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

REBECA SANTIAGO,
Plaintiff,

vs.

MEYER TOOL INC.,
Defendant.

Case No: 1:19-cv-32
Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).