**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **REBECA SANTIAGO** | ) | CASE NO. 1:19-CV-00032 |
| 1930 Emma Place | ) | |
| Cincinnati, Ohio 45223, | ) | JUDGE SUSAN J. DLOTT |
| | ) | |
| Plaintiff, | ) | MAGISTATE KAREN L. LITKOVITZ |
| | ) | |
| vs. | ) | |
| | ) | |
| **MEYER TOOL INCORPORATED** | ) | **FIRST AMENDED COMPLAINT** |
| 3055 Colerain Avenue | ) | |
| Cincinnati, Ohio 45225 | ) | |
| | ) | **Jury Demand Endorsed Herein** |
| **Also Serve Statutory Agent** | ) | |
| Alan Black | ) | |
| 3055 Colerain Avenue | ) | |
| Cincinnati, Ohio 45225 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DEANNA ADAMS** | ) | |
| c/o Meyer Tool Incorporated | ) | |
| 3055 Colerain Avenue | ) | |
| Cincinnati, Ohio | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **EDWIN M. FINN, JR.** | ) | |
| c/o Meyer Tool Incorporated | ) | |
| 3055 Colerain Avenue | ) | |
| Cincinnati, Ohio | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

For her First Amended Complaint against Defendants Meyer Tool Incorporated ("Meyer"), Deanna Adams ("Adams") and Edwin ("Huck") M. Finn, Jr. ("Finn"), Plaintiff, Rebeca Santiago ("Ms. Santiago"), alleges as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to the following statutes:

a. 28 U.S.C.§1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government; and

c. 28 U.S.C. § 1367 which gives the district court supplemental jurisdiction over state law claims.

2. This Court has personal jurisdiction over Meyer because Meyer's principal place of business is located in this judicial district.

3. This Court has personal jurisdiction over Finn and Adams, and venue is proper in this Court, because they each reside and are domiciled in this judicial district.

4. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c) because (1) Meyer is subject to personal jurisdiction in this judicial district and, thus, qualifies as a resident under 28 U.S.C. §1391(c) (2); and (2) all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

5. Ms. Santiago is an individual who resides and is domiciled in the County of Hamilton, City of Cincinnati, State of Ohio, and is a former employee of Meyer.

6.     Meyer is an Ohio corporation licensed to do business in the State of Ohio and its principal place of business is located in the County of Hamilton, City of Cincinnati, State of Ohio. Meyer was also an "employer" within the meaning of Title VII, Ohio Rev. Code §4112.01, *et. seq.,* the Americans with Disabilities Act of 1990, the Ohio Civil Rights Act, and the Equal Pay Act, at all times relevant to Ms. Santiago's claims.

7.     At all times relevant to the claims asserted herein, Finn was Ms. Santiago's direct supervisor.

8.     At all times relevant to the claims asserted herein, Adams was the HR Director for Meyer.

## BACKGROUND AND FACTUAL ALLEGATIONS

9.     Ms. Santiago restates the allegations in paragraphs 1 through 8 as if fully rewritten herein.

10.     Ms. Santiago was hired by then Quality Director, Gordy McGuire, and began employment with Meyer as an inspector on or about March 16, 1998.

11.     After a short period, Ms. Santiago was promoted to machine operator in Department 400.

12.     In Ms. Santiago's first year of employment with Meyer, her supervisor, Finn, began making inappropriate comments to her of a sexual nature.

13.     In one instance during her first year at Meyer, Ms. Santiago had brushed her teeth and had a small amount of toothpaste on her arm.  Finn made inappropriate comments regarding the toothpaste, suggesting that it was sperm.

14.     Ms. Santiago was the subject of numerous sexual jokes made directly to her by Finn.

3

15.     Finn would usually come around Ms. Santiago's work station around 9:00 a.m. each morning while Ms. Santiago's co-workers were on break to make rude and inappropriate comments to her.

16.     Ms. Santiago heard Finn make inappropriate comments to other women employees regarding their clothing.

17.     Ms. Santiago heard Finn tell other women employees that he liked them and that he would make a better partner for them than their husbands or boyfriends.

18.     Even though she regularly trained new male machinist employees, Finn would remark to her that she was doing or saying things "just like a girl."

19.     Finn harassed Ms. Santiago for many years, including unwanted flirting, making of sexual references out of simple statements, and constantly asking her out for drinks.

20.     During the entire time she was employed by Meyer, Ms. Santiago was paid less than comparable male machinists that are male, including those with much less experience than Ms. Santiago and those who Ms. Santiago even trained.

21.     As Ms. Santiago trained everyone else in her department, she assumed that she was the highest paid machinist and nobody advised her otherwise.

22      Over the course of her employment at Meyer, Ms. Santiago trained between 20 and 25 other machinists.

23.     Because of her gender, Ms. Santiago's pay was not reflective of her longevity at Meyer, seniority or advanced skill.

4

24. Ms. Santiago was not given a raise in 2016 by Finn, even for a cost of living increase, despite other machine operators doing the same or substantially similar work being given a raise.

25. Ms. Santiago was also made to work less desirable shifts than were worked by her male counterparts. In fact, Ms. Santiago was almost always the only machinist in her department during her shifts, requiring that she operate multiple machines simultaneously.

26. Meyer kept Ms. Santiago isolated, such that her only contact with other employees during her shifts was usually just with Finn.

27. Ms. Santiago was made to work through lunch by Finn and was blamed for other workers' errors.

28. Ms. Santiago was a dedicated and hard-working employee of Meyer who rarely had absences other than for medical reasons or family emergencies.

29. In 1999, Ms. Santiago missed a couple of days due to eye surgery.

30. In 2010, Ms. Santiago spent a number of days by her mother's bedside in the hospital until her mother passed.

31. Meyer docked Ms. Santiago attendance points for the time spent with her mother and/or forced her to use vacation time.

32. Neither Adams, Finn nor anyone else at Meyer advised Ms. Santiago that she had FMLA rights until July, 2014.

33. In 2014, Ms. Santiago suffered from severe migraines and was diagnosed with HIV.

34. In July, 2014, Ms. Santiago went to speak with JoAnn Poff in Meyer's HR department about the time off she was needing due to her medical condition and was then advised for the first time of her FMLA rights.

35. Ms. Poff gave Ms. Santiago FMLA paperwork to fill out.

36. Finn, as Ms. Santiago's direct supervisor, never told Ms. Santiago about the FMLA or her rights under the FMLA.

37. Ms. Santiago was approved to take intermittent disability leave under the FMLA.

38. Initially, Ms. Santiago's physician completed and signed a Medical Certification on July 7, 2014. The physician checked the intermittent category and wrote that Ms. Santiago had severe headaches/ migraines. She also listed that she had seen her for the condition on January 31, 2014 and July 3, 2014.

39. On August 11, 2015, Ms. Santiago sent an email to Finn disclosing that she had been diagnosed with HIV.

40. Finn's sexual harassment of Ms. Santiago ceased after he learned that she had HIV. Instead, he complained relentlessly about the amount of time-off she was taking.

41. Finn never complained to Ms. Santiago about the quality of her work. He would just tell her: "Get your shit together."

42. Gordy McGuire testified in his November 13, 2019, deposition that he could recall no issues with Ms. Santiago's work, which he describes as "average."

43. To the best of Ms. Santiago's knowledge and recollection, she never missed work at Meyer without first calling Ms. Poff or Finn.

44. Ms. Santiago had no write-ups for absences in 2015 and 2016.

6

45.     In fact, Ms. Santiago's attendance improved after June, 2016, due to medication changes.

46.     Finn would often rip up Ms. Santiago's documentation for her absences and other FMLA paperwork in front of Ms. Santiago.

47.     In July, 2017, for the first time ever, Finn advised Ms. Santiago of alleged "non-confirming" parts she purportedly ran on her machine several months before in May, without anything being said to Ms. Santiago regarding the parts' being "nonconfirming."

48.     Mr. McGuire testified in his deposition that it was Meyer's policy for nonconforming parts to be immediately brought to the machine operator's attention and that waiting until July to discuss parts produced in May was far too long and not in accordance with Meyer's policies.

49.     Finn started giving Ms. Santiago write-ups for "nonconfirming"  parts and then made Ms. Santiago sign forms stating that she had received re-training for the particular alleged errors when she, in fact, received no training because she was the most experienced machine operator in her department and trained everyone else in her position.

50.     On July 20, 2017, Finn informed Ms. Santiago in the presence of the assigned lead operator that evening, Mike Haggard, that she was being terminated for allegedly producing non-conforming parts.

51.     Earlier that day, Mr. Haggard summoned Ms. Santiago to walk with him to the breakroom.  When they arrived to the breakroom, Ms. Santiago saw Finn sitting at a table waiting to speak with her.

52.     Finn proceeded to accuse Ms. Santiago of producing additional nonconforming parts and held up pictures of parts that he alleged were produced by Ms. Santiago some months

earlier. Ms. Santiago could not confirm that the parts in the photographs were parts she produced.

53. Other employees of Meyer have produced non-conforming parts, including without limitation, co-worker Ruth Clark, and were retained by Meyer.

54. The majority of the machine operators in substantially similar positions at Meyer are white males, Finn is a white male and Finn's immediate supervisor / manager, Gordy McGuire, is a white male.

55. On or about October 31, 2017, Ms. Santiago filed a charge with the EEOC against Meyer for disability discrimination.

56. On or about July 13, 2018, Ms. Santiago filed a second charge with the EEOC against Meyer for gender discrimination under Title VII and violation of the Equal Pay Act.

57. On or about October 25, 2018, the EEOC issued a Right to Sue Letter to Ms. Santiago.

58. GE Aviation is a subsidiary of General Electric and is headquartered in Evendale, Ohio, outside of Cincinnati.

59. Upon information and belief, GE Aviation is among the top aircraft engine suppliers, and manufactures and sells engines for the majority of commercial aircraft.

60. On September 30, 2019, Ms. Santiago applied for employment as a "Cinti Service Machinist A" with GE Aviation.

61. GE Aviation is a customer of Meyer.

62. GE Aviation conducted a first interview, with was a behavioral test, with Ms. Santiago, which went very well. She was told that she had achieved a perfect score. In fact, it

was Ms. Santiago's understanding that it was likely she would receive a job offer from GE Aviation.

63.     At some point after the first interview, on or before November 8, 2019, GE called Meyer for a job reference on Ms. Santiago.

64.     At approximately 10:11 a.m. on November 8, 2019, Ms. Santiago received a voicemail message from "Halley" at GE Aviation.  In the message, Ms. Santiago was advised that Halley had "talked to a couple of folks at Meyer Tool" and she wasn't comfortable with the explanation for why Ms. Santiago was terminated by Meyer (the "Negative Job Reference"). She further advised Ms. Santiago that she was "not comfortable at this point moving forward with an offer" and that GE Aviation had decided to pursue other candidates for the position.

## FIRST CAUSE OF ACTION
### (*Gender Discrimination in Violation of Ohio Rev. Code §4112.01, et. seq.*)

65.     Ms. Santiago hereby incorporates by reference each and every allegation contained in paragraphs 1 through 64 of this First Amended Complaint as if fully rewritten herein.

66.     The Ohio Civil Rights Act ("OCRA") incorporates the protections afforded to persons who are a member of a non-majority protected class.

67.     Ms. Santiago is a female and is a member of a protected class.

68.     At all times relevant to the claims asserted herein, Ms. Santiago was qualified as an "employee," as defined in R.C. §4112.01(3), and Meyer was qualified as an "employer," as defined in R.C. §4112.01(2).

69.     Defendants Finn and Adams are each a "Person" as said term is defined in R.C. §4112.01 (A) (1).

70.     Finn reported to Gordon McGuire, a while male, and Deanna Adams reports to Doug Lang, President of Meyer.

71.     Under R.C. §4112.02 (A), it shall be an unlawful discriminatory practice for "any employer, because of the race, color, religion, **sex**, military status, national origin, **disability**, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." (Emphasis added)

72.     Under R.C. §4112.02 (J), it shall be an unlawful discriminatory practice for "***any person*** to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice." (Emphasis added)

73.     Ms. Santiago was terminated and/or otherwise subjected to an adverse employment action by Meyer on the basis of her gender.

74.     Upon information and belief, Doug Lang, President, approves all raises and all disciplinary procedures and terminations.

75.     Defendants Finn and Adams, along with Doug Lang, aided, abetted, compelled and/or encouraged and participated in unlawful discriminatory conduct against Ms. Santiago on the basis of her gender.

76.     Ms. Santiago suffered from a pattern and practice of discriminatory conduct and was discharged and otherwise subject to adverse employment action on the basis of her gender, which was ignored by Beau Easton, Vice President of Meyer, and/or was with tacit approval of Mr. Easton and Mr. Lang.

10

77.     The discrimination against and termination of Ms. Santiago by Defendants were unlawful discriminatory practices in accordance with R.C. §4112.02(A).

78.     At all times herein, Ms. Santiago remained qualified for her position with Meyer.

79.     Upon information and belief, Ms. Santiago's position at Meyer has been filled by other employees who are male.

80.     Any basis alleged by Meyer to be legitimate and non-discriminatory for Ms. Santiago's discharge is purely pre-textual.

81.     As a direct and proximate result of Defendants' discriminatory conduct against Ms. Santiago on the basis of her gender in violation of the OCRA, Ms. Santiago has suffered both economic loss and personal injury, and will continue to suffer such loss and harm for the foreseeable future.

82.     As a direct and proximate result of the discriminatory conduct complained of herein, Ms. Santiago has suffered damages in an amount to be proven at trial.

83.     Defendants' discriminatory conduct on the basis of gender was intentional, in bad faith, or was in wanton, reckless indifference to Ms. Santiago's rights not to suffer adverse employment action on the basis of her gender, thereby entitling Ms. Santiago to attorney fees and punitive damages.

## SECOND CAUSE OF ACTION
### (*Violation of the Americans with Disabilities Act Based on Disability/Perceived Disability*)

84.     Ms. Santiago restates the allegations in paragraphs 1 through 83 of this First Amended Complaint as if fully rewritten herein.

85.     The actions of Meyer, as described in the preceding paragraphs of this Complaint, injured Ms. Santiago in violation of the Americans with Disabilities Act of 1990, as codified, 42

U.S.C. §§12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166) (hereinafter, the "ADA").

86.     Under the ADA, "disability" means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

87.     Ms. Santiago is a qualified individual with a disability/perceived disability, as defined in Section 12111(8) of Title I of the ADA, and was so qualified at the time of her termination from employment by Meyer.

88.     Meyer is an "employer," as defined in Section 12111(5) of Title I of the ADA, and a "covered entity," as defined in Section 12111(2) of Title I of the ADA.

89.     HIV is a recognized specific condition that automatically constitutes a qualifying disability under the ADA. See House Labor Report at 51; House Judiciary Report at 28

90.     Meyer violated Section 12112 (Discrimination) of Title I and Section 12203 (Prohibition Against Retaliation and Coercion) of Title V of the ADA in its treatment of Ms. Santiago by:

a.     coercing, intimidating, threatening and/or interfering with Ms. Santiago's lawful exercise or enjoyment of, or on account of her having exercised or enjoyed rights granted or protected by the ADA, including, without limitation, terminating Ms. Santiago;

b.     allowing Finn to harass Ms. Santiago on the basis of her disability/perceived disability and permitting the creation of a hostile work environment on the basis of Ms. Santiago's disability/perceived disability;

91.     At all times pertinent to the claims herein, Ms. Santiago, with or without reasonable accommodation, could perform the essential functions of her position with Meyer.

92.     Ms. Santiago is entitled to an award of her compensatory damages in an amount to be proven at trial, which would fully compensate Ms. Santiago for her physical and emotional distress, humiliation, embarrassment, loss of income and benefits, and other damages suffered as a result of Meyer's violations of the ADA, as alleged in this First Amended Complaint, including her reasonable attorney fees, and for punitive damages for Meyer's malicious conduct and reckless disregard for Ms. Santiago's rights under the ADA.

## THIRD CAUSE OF ACTION
### (Disability Discrimination in Violation of Ohio Rev. Code § 4112.01, et seq.)

93.     Ms. Santiago hereby incorporates by reference each and every allegation contained in paragraphs 1 through 92 of this First Amended Complaint as if fully rewritten herein.

94.     The OCRA incorporates the protections afforded to persons who are disabled or are perceived to be disabled under the ADA.

95.     At all times relevant to the claims asserted herein, Ms. Santiago was qualified as an "employee," as defined in R.C. §4112.01(3), and Meyer was qualified as an "employer," as defined in R.C. §4112.01(2).

96.     Substantially similar to the definition in the ADA, the term "disability" is defined in R.C. §4112.01(13) as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

97.     R.C. §4112.02 (A) provides that it shall be an "unlawful discriminatory practice" for any employer, on the basis of certain protected characteristics, including, disability, "to

13

discharge without just cause, to refuse to hire, or **otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment**, **or any matter directly or indirectly related to employment."** (Emphasis added).

98.    Meyer, including by and through Finn and Adams, knew of or perceived Ms. Santiago to have a disability that limits one or more life activities of Ms. Santiago, including her ability to perform the required work for Meyer.

99.    The actual or perceived impairment of Ms. Santiago as a result of having HIV and related sever migraine headaches constitutes a disability under Ohio Revised Code §4112.02.

100.    Despite her disability/perceived disability, Ms. Santiago was, at all relevant times, qualified for her position at Meyer and could safely and substantially perform the essential functions of the position with or without reasonable accommodation.

101.    Ms. Santiago was disciplined and discriminated against by Meyer, including by and through Finn and Adams, as a result of Meyer's knowledge or perception that she was disabled, and her employment with Meyer was terminated without just cause as a result of this discrimination.

102.    Defendants Finn and Adams aided, abetted, compelled and/or encouraged and participated in unlawful discriminatory conduct against Ms. Santiago on the basis of her disability and/or perceived disability in violation of R.C. §4112.02 (J).

103.    Ms. Santiago has suffered both economic loss and personal injury as a result of Meyer's violation of the OCRA, and will continue to suffer such loss and harm for the foreseeable future.

104.    At all times relevant to the claims asserted herein, Ms. Santiago was regarded by Meyer, including by and through Finn and Adams, as having a disability.

14

105.    The discrimination against and termination of Ms. Santiago by Defendants were unlawful discriminatory practices in accordance with R.C. §4112.01(2).

106.    As a direct and proximate result of the discriminatory conduct of Defendants based on Ms. Santiago's disability / perceived disability, Ms. Santiago has suffered severe mental pain and anguish, and has incurred damages in an amount not yet fully ascertained, and to be determined at trial.

107.    As a further direct and proximate result of the discriminatory conduct of Defendants, Ms. Santiago has sustained a loss of earnings, embarrassment, humiliation, loss of standing in the community, and her ability to enjoy life has been adversely affected.

108.    Defendants' discriminatory conduct was intentional, in bad faith, or was in wanton, reckless indifference to Ms. Santiago's right not to suffer adverse employment action on the basis of her disability/perceived disability, thereby entitling Ms. Santiago to punitive damages, as well as compensatory damages, attorney fees and other relief.

## FOURTH CAUSE OF ACTION
### (*Gender-Based Pay Discrimination in Violation Of the Equal Pay Act, 29 U.S.C. § 206(d)(1)*)

109.    Ms. Santiago restates the allegations in paragraphs 1 through 108 of this First Amended Complaint as if fully rewritten herein.

110.    At all times relevant herein, Meyer was an "employer" within the meaning of the Equal Pay Act.

111.    Section 206(d)(1) of the Equal Pay Act makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are

performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

112.    Meyer has employed Ms. Santiago and male employees in jobs as machine operators, requiring substantially equal skill, effort, and responsibility.

113.    Ms. Santiago and her male counterparts performed their jobs under similar working conditions.

114.    Ms. Santiago was paid a lower wage than male employees doing substantially equal work.

115.    The differential in pay between male and female employees, such as Ms. Santiago, was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, or any other factor other than gender.

116.    Meyer caused, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the Equal Pay Act.

117.    As a direct, legal and proximate result of the wage discrimination, Ms. Santiago has sustained, and will continue to sustain, economic damages to be proven at trial. As a further result of Meyer's actions, Ms. Santiago has suffered emotional distress, resulting in damages in an amount to be proven at trial. Ms. Santiago further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorney fees and costs, and other compensation pursuant to 29 U.S.C. §216(b).

16

## FIFTH CAUSE OF ACTION
### (*Wrongful Termination In Violation Of Public Policy*)

118.    Ms. Santiago restates the allegations in paragraphs 1 through 117 of this First Amended Complaint as if fully rewritten herein.

119.    Meyer's termination of Ms. Santiago on the basis of gender and/or disability violates Ohio public policy against the discrimination as against Ohio Citizens on the basis of gender and/or disability in employment embodied in Ohio Revised Code section 4112, *et seq.*

120.    Dismissing employees under circumstances like those in Ms. Santiago's termination by Meyer would jeopardize the public policy.

121.    Ms. Santiago's termination was motivated by conduct related to public policy, as stated herein.

122.    The employer, Meyer, lacked overriding legitimate business justifications for the termination of Ms. Santiago.

123.    As a direct and proximate result of Meyer's malicious discriminatory acts and reckless disregard of Ms. Santiago's rights against Ohio public policy, Meyer is liable to Ms. Santiago for compensatory and punitive damages, attorney fees and costs in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (*Gender-Based Pay Discrimination in Violation Of the Ohio Equal Pay Act, R.C. §4111.17*)

124.    Ms. Santiago restates the allegations in paragraphs 1 through 123 of this First Amended Complaint as if fully rewritten herein.

125.    At all times relevant herein, Meyer was an "employer" and Ms. Santiago was an "employee" within the meaning of the Ohio Equal Pay Act.

126.     Ohio's Equal Pay Act, embodied in R.C. §4111.17, makes it unlawful for an employer to discriminate against an individual "in the payment of wages on the basis of race, color, religion, sex, age, national origin, or ancestry by paying wages to any employee at a rate less than the rate at which the employer pays wages to another employee for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions."

127.     Meyer's wage and raise policies and procedures had an adverse and disproportionate impact on Ms. Santiago because of her gender. Further, despite an affirmative action plan, Ms. Santiago's wages were clearly below those of males who had less seniority.

128.     Meyer's wage and raise policies were neither manifestly job-related nor consistent with business necessity.

129.     Less discriminatory alternatives existed to achieve any stated business purposes of Meyer for the gender discrepancy in pay.

130.     Meyer's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Ms. Santiago's right to be free from discrimination in pay based on gender.

131.     Ms. Santiago is entitled to reasonable attorney fees and costs of suit.

132.     As a direct, legal and proximate result of the wage discrimination, Ms. Santiago has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Meyer's actions, Ms. Santiago has suffered emotional distress, resulting in damages in an amount to be proven at trial. Ms. Santiago further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorney fees and costs, and other compensation pursuant to R.C. §4111.01 *et seq.*.

18

## SEVENTH CAUSE OF ACTION
### (Violation of the Family and Medical Leave Act pursuant to 29 U.S.C. § 2601 *et seq.*)

133. Ms. Santiago realleges paragraphs 1 through 132 of this First Amended Complaint as though fully rewritten herein.

134. On or about July 20, 2017, Meyer wrongfully terminated Ms. Santiago by interfering with her legal rights and/or in retaliation for her attempting to avail herself of her legal rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

135. At all times herein, Ms. Santiago was an eligible "employee" and Meyer was an "employer" as defined in the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

136. Ms. Santiago availed herself of her protected rights under the FMLA by requesting time off to address her debilitating and qualifying serious health conditions.

137. As a result of her chronic and long-term medical conditions, at all relevant times Ms. Santiago was entitled to leave under the FMLA.

138. In 2016, the attendance records of Ms. Santiago show that she called off work due to illness and due to migraines, and that she used her intermittent FMLA leave for the entire year.

139. Meyer recorded her illness on time clock records in their system, yet failed to honor her on-going FMLA leave, which provided for 12 weeks total of unpaid leave time.

140. Attendance was not an essential element of Ms. Santiago's job.

141. Meyer, through Spooner, a third party, literally used the physician's estimates to assess Ms. Santiago points for attendance when she exceeded the physician's estimates of time off for the medical condition.

142.     Further, on January 5, 2016 (a full year before her next certification on January 3, 2017), Meyer required and certified that Ms. Santiago was entitled to leave beginning again on January 20, 2017.   In the condition sections of the applicable form for leave, she was to mark illness or appointment on the TMS system.

143.     The Spooner form dated 1/17/2017 by Dr. Jadeed stated treatment dates of July 3, 2014, November, 19, 2014, May 19, 2015, June 19, 2015, October 15, 2015, June 16, 2016, August 16, 2016, a next appointment February 14, 2017, and specified that Ms. Santiago had a chronic condition of indefinite duration.

144.     On July 20, 2017, after returning from her FMLA leave, Ms. Santiago was informed by her supervisor, Finn, that she was being terminated.

145.     On September 15, 2017, Ms. Santiago filed and sent a letter to HR complaining about her termination based on her taking of FMLA leave; however, no internal investigation committee was established and no fact finding per corporate policy was completed and documented by Meyer.

146.     As a direct and proximate result of the conduct of Meyer, Ms. Santiago has suffered severe mental pain and anguish and incurred medical expenses in an amount not yet ascertained.  She has reason to believe that she will incur medical expenses in the future.  She has further sustained a loss of earnings, embarrassment, humiliation, loss of standing in the community, and her ability to enjoy life has been adversely affected.

147.     Meyer's unlawful acts were intentional, in bad faith or were in wanton, reckless indifference to Ms. Santiago's rights not to suffer adverse employment action on the basis of her right to FMLA leave to address her serious health conditions, thereby entitling Ms. Santiago to punitive damages, as well as compensatory damages from Meyer and other costs and fees.

20

## EIGHTH CAUSE OF ACTION
### (Negligent Retention / Supervision)

148.    Ms. Santiago realleges paragraphs 1 through 147 of this First Amended Complaint as though fully rewritten herein.

149.    Meyer, through its President, Doug Lang, HR and Gordon McGuire, had actual or constructive knowledge of Finn's abusive and discriminatory conduct against Ms. Santiago and other women working for supervisor Finn on the basis of gender, and aiding, abetting and inciting of such unlawful discriminatory behavior toward Ms. Santiago throughout the time she was employed by Meyer.

150.    As a direct and proximate result of Meyer's negligence in retaining, failing to terminate and/or failing to supervise Finn, or take other action to prevent the continued harassment and abuse of, and discrimination against, Ms. Santiago by Finn, Ms. Santiago has suffered damages in an amount to be established at trial.

## NINTH CAUSE OF ACTION
### (Defamation; slander)

151.    Ms. Santiago realleges paragraphs 1 through 150 of this First Amended Complaint as though fully rewritten herein.

152.    Upon information and belief, Meyer made one or more false statements about Ms. Santiago in giving the Negative Job Reference.

153.    Upon information and belief, Adams and/or Finn were among the individuals GE spoke with at Meyer in receiving the Negative Job Reference.

154.    The false statement(s) given to GE by Meyer and, upon information and belief, Adams and/or Finn, were defamatory.

155.    Meyer and, upon information and belief, Adams and/or Finn, published the defamatory statement(s) about Ms. Santiago to GE in giving the Negative Job Reference.

156.    Ms. Santiago suffered injury to her reputation, profession and trade as a direct and proximate result of the defamation of her by Meyer and, upon information and belief, Adams and/or Finn, in providing the Negative Job Reference to GE.

157.    Meyer and, upon information and belief, Adams and/or Finn, publicized the defamatory statements to GE with the intent to injure Ms. Santiago's reputation or expose her to public hatred, contempt, ridicule, shame or disgrace, or to affect her adversely in her profession or trade.

158.    As a direct and proximate result of Meyer's and, upon information and belief, Adams' and/or Finn's, defamatory conduct, Ms. Santiago has suffered damages in an amount to be established at trial.

**TENTH CAUSE OF ACTION**
**(Creation of Hostile Work Environment Based on Gender, Disability and Perceived Disability in Violation of Ohio Rev. Code §4112.02(A) and 4112.99)**

159.    Ms. Santiago realleges paragraphs 1 through 158 of this First Amended Complaint as though fully rewritten herein.

160.    On the basis of her gender, disability and/or perceived disability, Ms. Santiago was subjected to a hostile work environment that was so severe and pervasive as to permeate the work environment and alter the conditions of her employment due to the harassment of Finn and the failure of Meyer, including Adams, to remedy the situation.

161.    The harassing conduct by Finn against Ms. Santiago because of her gender and disability and/or perceived disability was unwelcome.

22

162.     Meyer, including Adams, knew or should have known about the harassment of Ms. Santiago by Finn and failed to take immediate and appropriate corrective action.

163.     As a direct and proximate result of the creation and maintenance of a hostile work environment on the basis of gender and disability and/or perceived disability, Ms. Santiago has suffered damages and is entitled to an award of her compensatory damages in an amount to be proven at trial before a jury, which would fully compensate her for her physical and emotional distress, humiliation, embarrassment, loss of income and benefits, and other damages suffered as a result of Meyer's unlawful and hostile conduct, including, without limitation, back pay, with interest thereon; front pay or restoration to her prior position; compensatory damages; and expenses and costs, including attorney's fees.

## ELEVENTH CAUSE OF ACTION
**(Creation of Hostile Work Environment Based on Disability and/or Perceived Disability in Violation of the Americans with Disabilities Act)**

164.     Ms. Santiago realleges paragraphs 1 through 163 of this First Amended Complaint as though fully rewritten herein.

165.     At all times relevant to this claim, Ms. Santiago was a qualified individual with a disability/perceived disability, as defined in Section 12111(8) of Title I of the ADA.

166.     On the basis of disability and/or perceived disability, Ms. Santiago was subjected to a hostile and abusive work environment that was so severe and pervasive as to permeate the work environment and alter the conditions of her employment due to the harassment of Finn and the failure of Meyer, including Adams, to remedy the situation.

167.     The harassing conduct by Finn against Ms. Santiago because of her disability and/or perceived disability was unwelcome.  Ms. Santiago advised HR that she expected this hostility on the part of Finn toward her disability.

23

168.    The unwelcome harassment of Ms. Santiago on the basis of her disability and/or perceived disability had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile or offensive work environment.

169.    Meyer, including Adams, knew or should have known about the harassment of Ms. Santiago by Finn and failed to take immediate and appropriate corrective action.

170.    As a direct and proximate result of the creation and maintenance of a hostile work environment on the basis of disability and/or perceived disability, Ms. Santiago has suffered damages and is entitled to an award of her compensatory damages in an amount to be proven at trial before a jury, which would fully compensate her for her physical and emotional distress, humiliation, embarrassment, loss of income and benefits, and other damages suffered as a result of Meyer's unlawful and hostile conduct, including, without limitation, back pay, with interest thereon; front pay or restoration to her prior position; compensatory damages; and expenses and costs, including attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Rebeca Santiago, respectfully requests the following relief:

A.    As to the First Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's termination of Ms. Santiago's employment in violation of Title VII of the Civil Rights Act, as alleged in this Complaint;

B.    As to the Second Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is

sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's unlawful and malicious discriminatory conduct in violation of the ADA;

C.      As to the Third Cause of Action, for judgment against Meyer, Finn and Adams in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Defendants' harassment and discrimination against Ms. Santiago on the basis of disability and/or perceived disability, and Meyer's termination of Ms. Santiago's employment in violation of the Ohio Civil Rights Act; R.C. § 4112.01, *et seq*. on the basis of disability and/or perceived disability;

D.      As to the Fourth Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's discriminatory wage practices and termination of Ms. Santiago's employment in violation of the Federal Equal Pay Act, including liquidated damages;

E.      As to the Fifth Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's purposeful and malicious violations of public policy;

F.      As to the Sixth Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's discriminatory wage practices and termination of Ms. Santiago's employment in violation of the Ohio Equal Pay Act, including liquidated damages;

G.      As to the Seventh Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's purposeful and malicious violations of the FMLA;

H.      As to the Eighth Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's negligent retention and supervision of Finn;

I.      As to the Ninth Cause of Action, for judgment against Meyer, Finn and Adams in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of reputation, injury to her trade and profession, loss of income and loss of employment benefits, and other damages suffered as a result of Defendants' defamation by slander of Ms. Santiago;

J.      As to the Tenth Cause of Action, for judgment against Meyer, Finn and Adams in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Defendants' creation and maintenance of a hostile work environment based on gender and disability and/or perceived disability in violation of the Ohio Civil Rights Act; R.C. § 4112.01, *et seq.*;

K.      As to the Eleventh Cause of Action, for judgment against Meyer in favor of Ms. Santiago for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Ms. Santiago for her physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits and other damages suffered as a result of Meyer's creation and maintenance of a hostile work environment based on disability and/or perceived disability in violation of the ADA;

L.      As to all counts, Ms. Santiago's reasonable attorney fees and court costs;

M.      As to all counts, punitive damages to the extent permitted by applicable federal and/or state law in an amount to be determined at trial; and

N.      As to all counts, such other legal and/or equitable relief to which Ms. Santiago may be entitled.

Respectfully submitted,

GRUBB & ASSOCIATES, LPA

*/s/ Mark E. Owens*
Natalie F. Grubb (0062596)
Mark E. Owens (0068335)
437 W. Lafayette Road, Suite 260-A
Medina, Ohio 44256
Ph: (330) 725-7252
Fax: (330) 723-1095
E-Mail: officemgr@grubbandassoc.com
*Counsel for Ms. Santiago*


## JURY DEMAND

Ms. Santiago demands a trial by jury on all issues so triable.

*/s/ Mark E. Owens*
Natalie F. Grubb (0062596)


## CERTIFICATE OF SERVICE

The foregoing *Plaintiff's First Amended Complaint* was filed electronically on November 27, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties to this action.

*/s/ Mark E. Owens*
Mark E. Owens (0068335)
*Attorney for Plaintiff*

28