UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| REBECA SANTIAGO,<br>    Plaintiff, | Case No. 1:19-cv-32<br>McFarland, J.<br>Litkovitz, M.J. |
| vs. | |
| MEYER TOOL INC., et al.,<br>    Defendants. | SUPPLEMENTAL REPORT<br>AND RECOMMENDATION |

On April 17, 2024, the undersigned ordered plaintiff to file documentation of her financial status in the form of an affidavit or other documentation to enable the Court to determine whether plaintiff has overcome the presumption in favor of the Clerk's award of costs to Meyer Tool based on indigency. (Doc. 149). This matter is before the Court on plaintiff's financial affidavit and supporting documentation (Docs. 150, 153) and Meyer Tool's response in opposition (Doc. 152).

## I. BACKGROUND[1]

Fed. R. Civ. P. 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." The rule "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001) (citation omitted). The Court may deny costs where it "would be inequitable under all the circumstances in the case." *Arnold v. Taylor Corp.*, No. 3:17-cv-1381, 2020 WL 1862875, at *1 (N.D. Ohio Feb. 24, 2020) (internal quotation marks omitted) (citing *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 2001)) (quoting *Lichter Found., Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959)). One such circumstance is the

---

[1] The procedural background of this case is set forth in the April 17, 2024 Report and Recommendation and Order and will not be fully repeated here. (Doc. 149). District Judge McFarland adopted the Report and Recommendation without objection on May 15, 2024. (Doc. 151).

losing party's inability to pay the costs either now or in the future. *Singleton*, 241 F.3d at 539. "A losing party's indigence weighs against taxing her with the winning party's costs." *Banks v. Bosch Rexroth Corp.*, 611 F. App'x 858, 861 (6th Cir. 2015) (citing *Singleton*, 241 F.3d at 539). The Court must determine a litigant's capacity to pay the assessed costs upon an allegation of indigency. *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989).

This Court upheld the award of costs to Meyer Tool but deferred its decision on whether plaintiff has overcome the presumption that Meyer Tool is entitled to costs on the sole basis of plaintiff's alleged inability to pay. (Docs. 149, 151). Plaintiff has now filed an affidavit of her financial status, with supporting documentation. (Docs. 150, 153). Meyer Tool filed a response, arguing many of the expenses are not properly documented. (Doc. 152).

## II. ANALYSIS

Plaintiff bears the burden of proving "she is unable, as a practical matter and as a matter of equity, to pay" the court costs awarded to Meyer Tool. *Aubin Indus., Inc. v. Smith*, No. 1:04-cv-681, 2009 WL 1674845, at *4 (S.D. Ohio June 15, 2009). Plaintiff must provide "actual documentation of the inability to pay." *Jaiyeola v. Toyota Motor Corp.*, No. 1:17-cv-562, 2019 WL 8351525, at *2 (W.D. Mich. Dec. 6, 2019) (quoting *Lewis v. United States*, No. 02-2958 B, 2006 WL 1628091, at *2 (W.D. Tenn. Apr. 7, 2006) (in turn quoting *A.D. v. Deere & Co.*, 229 F.R.D. 189, 192 (D.N.M. 2004)). Plaintiff "must demonstrate not merely that payment would be a burden, but also that [she] is indigent." *Tuggles v. Leroy-Somer, Inc.*, 328 F. Supp. 2d 840, 845 (W.D. Tenn. 2004). A party is indigent if she is incapable of paying the court-imposed costs at this time or in the future. *Id.*; *see also Rashid v. Communications Workers of America*, No. 3:04-cv-291, 2007 WL 315355, at *4 (S.D. Ohio Jan. 30, 2007). "Courts also look at factors including severe debt, inability to acquire a job due to disability, and having dependents." *Mod.*

*Holdings, LLC v. Corning, Inc.*, No. 5:13-cv-00405 2023 WL 5058828, at *2 (E.D. Ky. Aug. 8, 2023) (citing *Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, No. 2:06-cv-413, 2012 WL 1020292 (S.D. Ohio Mar. 26, 2012); *Robinson v. City of N. Olmstead*, No. 193-cv-203, 1997 WL 33169252, (N.D. Ohio May 12, 1997)). Additionally, courts have considered lack of assets and whether the losing party is employable. *Thompson v. Ohio State Univ.*, No. 2:12-cv-1087, 2016 WL 1625828, at *2 (S.D. Ohio Apr. 25, 2016) (losing party had applied and been rejected from approximately 200 jobs, had no assets or investments, and had approximately $40,000 in student debt). Courts have also found that medical expenses associated special needs children weigh heavily against an award of costs. *See Weckbacher v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 2:16-cv-01187, 2020 WL 5250474, at *1 (S.D. Ohio Sept. 3, 2020).

  Claims of indigency do not necessarily relieve a losing party of its duty to pay costs. Some courts have exercised their discretion to order a partial remittance of costs based on the losing party's financial circumstances. *See Culver v. CCL Label Inc.*, No. 03-2722, 2012 WL 1900653, at *4 (W.D. Tenn. May 24, 2012) (citing *Singleton*, 241 F.3d at 540-41); *see also Harper v. University of Toledo*, No. 3:22-cv-1308, 2024 WL 2702124, at *4 (N.D. Ohio May 24, 2024) (Court allowed a fifty-percent reduction upon a finding of indigency but where plaintiff was "not completely destitute"); *Brinson v. Summit Cnty.*, No. 5:21-cv-1638, 2023 WL 6049322, at *4 (N.D. Ohio Sept. 15, 2023) (reducing amount given the losing party's modest means and current financial situation.); *Jaiyeola*, 2020 WL 13180216, at *2 (costs reduced from $3,321.59 to $2,500.00 finding losing party "demonstrated ability to pay some litigation costs" where party received disability income of $1,904.00; his wife received $1,080 in gross wages; both had combined monthly expenses of $5,155.46; and both had three minor children to support, including one with a disability). Court have also ordered or otherwise encouraged parties to

3

devise payment plans, with or without court intervention. *See Kendell v. Shanklin*, No. 2:20-cv-985, 2021 WL 933281, at *2 (S.D. Ohio Jan. 28, 2021) (citing *Tuggles*, 328 F. Supp. 2d at 845 (noting that "[s]ome courts have awarded costs and established a payment plan which takes into account the losing party's ability to pay") (citing *Harris v. Snead*, 73 F.3d 362 (6th Cir. 1995) ("The amount of costs requested was supported by the record, and the district court's order sets forth a payment plan which takes into account [plaintiff's] ability to pay the costs.")).

In her affidavit, plaintiff avers her net pay is $1,443.00 bi-weekly. (Doc. 150 at PAGEID 5293). She attaches two paystubs to her affidavit, which when averaged provide a bi-weekly net pay of $1,458.68. (Doc. 150 Exh. 1). Averaged over twenty-six pay periods per year, the Court finds plaintiff's average net monthly income is $3,160.47, with annual net wages of $37,925.68.

Plaintiff states her monthly expenses are approximately $3,305.61. (*Id.* at ¶ 6). Plaintiff avers she "has no money left in [her] bank account and [has] so other source of income" after payment of monthly expenses. (Doc. 150 at PAGEID 5295 ¶16).

As an initial matter, the Court notes that plaintiff has included expenses for an adult daughter. However, plaintiff has neither averred nor documented any circumstances showing her adult daughter is unable to support herself. The Court will not consider expenses related to plaintiff's adult daughter in the analysis of plaintiff's ability to pay court costs. *See Smith v. Joy Techs., Inc.*, No. 11-cv-270, 2015 WL 12977344, at *1 (E.D. Ky. Mar. 23, 2015) ("Because the plaintiffs do not explain whether the two adult children are enrolled in school and provide no reason why they cannot work, the adult children will not be considered in the indigency analysis.").

4

In addition, after reviewing plaintiff's documentation, the Court notes some discrepancies. The Court reviews these items below in considering plaintiff's allegation of indigency.

**Car insurance costs**

Plaintiff avers she pays $228.88 for car insurance each month. (Doc. 150 at PAGEID 5294 ¶8).[2] The quote submitted is for two vehicles, a 2020 GMC Terrain, which is plaintiff's according to her affidavit, and a 2016 "Hyun Veloster T." (*Id*. at PAGEID 5319). Additionally, the documentation shows the insurance coverage is for plaintiff and a twenty-nine-year-old single female who drives the second vehicle for "work." (*Id*.). As discussed above, the Court will not consider the expenses for plaintiff's adult daughter. The annual premium for plaintiff's vehicle is $1692.00, which translates to a monthly payment of $141.00. The Court attributes $141.00 to plaintiff's monthly car insurance, and not the $228.88 listed in her affidavit.

**Credit card expenses**

Plaintiff lists a monthly bill of $224.00 to Credit One Credit. (Doc. 153 Exh. 1 at PAGEID 5349). However, her documentation shows a balance of $75.14, with a minimum balance due of $30.00. (Doc. 150 Exh. 2 at PAGEID 5308-09). The Court will consider that plaintiff has a balance of $75.14, with a monthly payment of $30.00 on this credit card account.

**Phone and water expenses**

Plaintiff lists monthly expenses to T-Mobile in the amount of $194.35 in her spreadsheet. (Doc. 153 Exh. 1 at PAGEID 5349). Plaintiff's documentation includes a screenshot of a past

---

[2] The documentation attached to plaintiff's affidavit is a quote for automobile insurance, not an invoice. (Doc. 150 Exh. 2 at PAGEID 5316-20). Nevertheless, the Court gives plaintiff the benefit of the doubt on the amount of this expense based upon the averment in her affidavit.

5

due balance of $194.35. (*Id*. at PAGEID 5338). The Court will consider plaintiff has a balance of $194.35 for this debt but not a monthly payment of this amount on an ongoing basis.

Plaintiff includes a monthly water bill in the amount of $78.00. (Doc. 153 Exh. 1 at PAGEID 5349). Documentation attached to her affidavit shows charges of $69.18 for April 2024 and $66.83 for May 2024. (Doc. 150 Exh. 2 at PAGEID 5339). The Court will use the average of these amounts for a monthly water bill of $68.00.

### Medical expenses

Plaintiff's affidavit states that due to her HIV status, she has "many medical co-payments for services and prescriptions, and deductibles to meet." (Doc. 150 at PAGEID 5295). In her motion to vacate costs, plaintiff alleged her health status "requires expensive medical treatment her HIV and related conditions." (Doc. 146 at PAGEID 5245).

Plaintiff lists a balance of $2,366.00 on her spreadsheet for medical bills and avers she owes this amount in her affidavit. (Doc. 150 at PAGEID 5294 ¶ 14; Doc. 153 Exh. 1). The documentation attached to plaintiff's affidavit reflects five bills for medical services, totaling patient balances of $595.44. (Doc. 150 Exh. 2 at PAGEID 5321-25). On average, this amounts to medical payments of $120.00 per month.

Plaintiff states in her affidavit that she has deductions from her bi-weekly checks for medical insurance premiums and for her health savings account totaling $38.64. (Doc. 150 at PAGEID 5295). However, the Court has taken this into account in considering her net pay, rather than her gross pay.

### Back taxes

Plaintiff includes a document from the Internal Revenue Service (IRS) showing she owes past taxes for the year 2017 in the amount of $13,803.80. (Doc. 150 Exh. 2 at PAGEID 5333).

6

Plaintiff also attaches a document from the Hamilton County, Ohio, auditor's website showing she owes back property taxes in the amount of $3,384.05. (*Id*. at PAGEID 5335). The Court will take into consideration that plaintiff owes a total of $17,187.85 in back taxes.

**Miscellaneous**

Plaintiff's spreadsheet lists a personal loan of $232.00 per month. (Doc. 153 Exh. 1 at PAGEID 5349). She does not expound on this loan in her affidavit and does not provide any documentation for it. Accordingly, the Court will not consider this amount.

Plaintiff also attaches "receipts" of bills she owes in the form of screenshots from a cellular telephone. These include an expense to VRBO,[3] referencing an "immaculate beachfront studio great view. . ." of which $988.06 has been paid to date, with a remaining balance of $175.63. (Doc. 150 Exh. 2 at PAGEID 5299). The Court will not consider what appears to be a vacation rental as evidence of financial hardship.

Plaintiff also provides an undated screenshot showing a balance of $156.59 owed to Amazon for general merchandise. (Doc. 150 Exh. 2 at PAGEID 5300). There is also documentation for an order from Wal-Mart, but it does not include who owes the payment for this purchase. (*Id*. at PAGEID 5330). The Court will not consider these expenses as attributable to plaintiff given the lack of documentation.

Plaintiff states in her affidavit that she is responsible for a monthly payment of $38.67 for her daughter's student loan. (Doc. 150 at PAGEID 5294 ¶15). Plaintiff states she has attached the most recent statement for this loan to her affidavit, but she has not. Nonetheless, given this is a debt for an adult child, the Court will not consider it.

---

[3] VBRO stands for "Vacation Rentals by Owners."

Regarding a $150.00 monthly expense she lists for lawncare, plaintiff includes screenshots of text messages as her documentation of this expense. (Doc. 150 Exh. 2 at PAGEID 5327-28). These text message screenshots reference a one-time payment of $60.00, and there is nothing to substantiate how frequently plaintiff pays this amount or that she pays $150.00 in monthly lawncare. (*Id*.). Presumably, plaintiff will not have lawncare expenses in the winter months. Given the lack of documentation for this expense, the Court will nonetheless consider that plaintiff pays $60 per month for lawncare for six months of the year, for a monthly average over the year of $30.00. This is the only miscellaneous expense the Court will consider.

The Court concludes plaintiff has substantiated net monthly expenses averaging $2,686.38. She provides documentation showing she owes $79.92 through October of 2024 for overdue amounts to Duke Energy; $3,384.05 in back property taxes; $13,803.80 to the IRS; and $3,682.25 in credit card debt. Plaintiff's average net monthly income is $3,160.47, with annual net wages of $37,925.64. Based on the documentation plaintiff provides, her monthly income exceeds her average monthly expenses. However, plaintiff has debts in excess of $19,000.

Plaintiff's circumstances do not mirror many of those where losing parties have been relieved of awarded costs. Plaintiff is employed; she is not under a disability; and she has no minor children or children with disabilities to care for. *See*, *e.g*., *Mod. Holdings, LLC*, 2023 WL 5058828, at *2; *Thompson*, 2016 WL 1625828, at *2; *Weckbacher*, 2020 WL 5250474, at *2. While plaintiff's monthly income versus her monthly expenses does not necessarily suggest indigency, plaintiff's unpaid taxes, particularly those on her home, evidence severe debt. Potentially putting plaintiff in financial distress to satisfy costs after losing a civil rights case will do nothing to serve the ends of justice. Other courts, exercising their discretion, have allowed a reduction of costs for civil rights litigants of modest means who have pursued litigation in good

8

faith. *See Barrett*, 2010 WL 11692976, at *4 (reducing costs to account for plaintiff's "modest means"); *see also Brinson*, 2023 WL 6049322, at *4 ("Although there is justification for assessing the entirety of defendants' requested costs, given [plaintiff's] modest means and current financial situation, the Court will use its discretion to reduce the amount of taxed costs to $9,384.93 (half of the requested amount)."). The undersigned determines this is the fairest approach under the circumstances. Accordingly, the undersigned recommends a 50% reduction in the costs assessed against plaintiff. The parties are encouraged to devise a mutually satisfactory payment plan taking into account plaintiff's modest means and outstanding tax debts. *See, e.g., Lewis*, 2006 WL 1628091, at *2 (citing *Tuggles*, 328 F. Supp. 2d at 846). If the parties are unable to work out a payment plan, plaintiff may file a motion to request that the Court set an appropriate plan.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's motion filed pursuant to Fed. R. Civ. P. 54(d)(1) to vacate costs be **GRANTED IN PART** allowing a 50% reduction in the costs awarded against her ($2,880.65) and **DENIED IN PART** as to a total reduction in cost.

2. The parties be encouraged to devise a mutually satisfactory payment plan taking into account plaintiff's modest means and outstanding tax debts.

Date: 8/2/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

REBECA SANTIAGO,
    Plaintiff,

vs.

MEYER TOOL INC., et al.,
    Defendants.

Case No. 1:19-cv-32
McFarland, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).